■ In the Matter of NAHJA I. and Another, Children Alleged to be Abandoned. ALBANY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JAMES I., Appellant. [717 NYS2d 807] —Spain, J. Appeal from an order of the Family Court of Albany County (Maney, J.), entered October 12, 1999, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be abandoned, and terminated respondent's parental rights.

Respondent is the father of twin daughters born in May 1998, who have been in petitioner's custody and in foster care since September 1998. Respondent has been incarcerated since November 1997 and has seen the children on only two occasions when their mother brought them to visit him in jail shortly after their birth. On November 10, 1998, petitioner informed respondent that the children had been removed from their mother's custody and placed in foster care and provided him with instructions on how to seek custody of the children. Respondent never took such steps and, on May 13, 1999, petitioner commenced this proceeding to terminate respondent's parental rights on the ground that he had abandoned the children for a period of six months prior to the filing of the petition. Following a hearing, Family Court granted the petition, terminated respondent's parental rights and transferred custody and guardianship of the children to petitioner for adoption. Respondent appeals.

We affirm. It is well settled that "[a] finding of abandonment is warranted where it is shown by clear and convincing evidence that the [parent has] failed to have contact with the children or the agency during the six-month period immediately prior to the date of filing the petition" (*Matter of Richard X.*, 226 AD2d 762, 764-765, *lv denied* 88 NY2d 808; *see*, Social Services Law § 384-b [4] [b]; *Matter of Candice K.*, 245 AD2d 821). "Abandonment occurs when a 'parent evinces an intent to forego [his or] her parental rights as manifested by a failure to visit the child and communicate with the child or agency although able to do so, if not prevented nor discouraged from doing so by the agency' " (*Matter of Candice K., supra*, at 821-

822, quoting *Matter of Michelle S.*, 234 AD2d 800, 801; *see, Matter of Omar RR.*, 270 AD2d 588). The burden is on respondent to establish that he maintained sufficient contact with the children or agency (*see, Matter of Candice K., supra*). Moreover, "an abandonment petition is not defeated by a showing of sporadic and insubstantial contacts where clear and convincing evidence otherwise supports granting the petition" (*id.,* at 822; *see, Matter of Omar RR., supra*).

It is undisputed that during the relevant period—from November 13, 1998 to May 13, 1999—respondent did not visit or have any direct contact with the children. He did, however, write a letter to petitioner on February 27, 1999 in response to a letter he had received from petitioner inquiring about his plans for the children. In the letter respondent requested that a blood test be performed to determine whether he was, in fact, the children's father and indicated that if he were the father, he would be willing to make arrangements to have his wife— who is not the children's mother—obtain custody of the children during his incarceration which he expected to last 6½ to 13 years. Petitioner then mailed respondent blank paternity petitions with directions to fill them out and send them to Family Court and reminded him of the importance of making a plan and taking action. According to the testimony of petitioner's caseworker, respondent never returned the paternity petitions or had any further contact with petitioner prior to the commencement of this proceeding.

Respondent's uncorroborated assertions that he sent other letters and that he completed the petitions and mailed them to petitioner presented credibility issues which Family Court rationally resolved against him (*see, Matter of Christopher MM.*, 210 AD2d 767, *lv denied* 85 NY2d 807). Respondent's incarceration, under the circumstances of this case, did not excuse his failure to seek visitation with his children or make contact with them or with petitioner (*see, Matter of Shannon QQ.*, 262 AD2d 679; *Matter of Antwan Malik F.*, 232 AD2d 216, 217). Moreover, we find no evidence in the record to support respondent's assertion that petitioner prevented or discouraged him from visiting or communicating with the children (*see,* Social Services Law § 384-b [5] [a]). The fact that petitioner, as a matter of policy, does not give out the names and addresses of foster parents did not prevent respondent from contacting the children through their caseworker or requesting that the caseworker make arrangements for supervised visitation (*see, Matter of Precious Trenee O.*, 253 AD2d 701; *Matter of Latif HH.*, 248 AD2d 831).

Finally, with regard to respondent's argument that it was an abuse of discretion for Family Court to dispense with a dispositional hearing prior to the termination of his parental rights, we note that he did not object to the court's determination in this regard and, accordingly, the issue is not properly preserved for appeal (*see, Matter of Brian QQ.*, 166 AD2d 749). In any event, were we to review the issue we would find the argument unavailing. As we have previously held, "there is no statutory requirement that a dispositional hearing be conducted in connection with a proceeding based upon the ground of abandonment" (*Matter of Alex MM.*, 260 AD2d 675, 676). On this record, we conclude that Family Court's decision to dispense with a dispositional hearing was not an abuse of discretion (*see, id.*; *Matter of Howard R., Jr.*, 258 AD2d 893).

Cardona, P. J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.