■ In the Matter of TIFFANY RR., a Child Alleged to be Abandoned. SARATOGA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; PAUL RR., Appellant. [843 NYS2d 477]—

Carpinello, J. Appeal from an order of the Family Court of Saratoga County (Abramson, J.), entered October 25, 2006, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Tiffany RR. an abandoned child, and terminated respondent's parental rights.

Respondent (hereafter the father) is the parent of a girl born in 2004. When the child was one month old, she suffered from a fracture to her arm while in the father's care. As a result of this incident, the child was adjudicated to be an abused child and placed in petitioner's care and custody. An order of protection was entered barring the father from having any contact with her until she reached 18 years of age. The order permitted the father to apply for a modification of it after 2½ years and upon successful completion of anger management and parenting classes. As a result of the incident, the father pleaded guilty, pursuant to an *Alford* plea, to attempted assault with an agreed-upon sentence of 1 to 3 years in prison. He was sentenced on May 3, 2005. In June 2006, petitioner commenced this proceeding to terminate his parental rights on the ground of abandonment. Following a hearing, the petition was granted, prompting this appeal.

Family Court properly terminated the father's parental rights on the ground of abandonment. A finding of abandonment is appropriate when there is clear and convincing evidence that a parent evinces an intent to forego his or her parental rights during the six-month period prior to the filing date of the petition by failure to visit or communicate with the child or the agency that has custody of the child, although able to do so and not prevented or discouraged from doing so by that agency (*see* Social Services Law § 384-b [3] [g]; [4] [b]; [5] [a]; *Matter of Cheyenne S.*, 20 AD3d 748, 749 [2005]). While the father was prohibited from contacting his daughter during the relevant six-month period based on the order of protection, the order did not prohibit him from contacting petitioner, and his incarceration was no excuse for failing to do so (*see Matter of Cheyenne S.*, 120 AD3d at 749; *Matter of Oscar L.*, 8 AD3d 569 [2004]; *Matter of T. Children*, 284 AD2d 401 [2001]; *Matter of Ronald D.*, 282 AD2d 533 [2001]; *Matter of Orange County Dept. of Social Servs. [Diane A.]*, 203 AD2d 367 [1994]).

There is no dispute that the father made no attempt to contact petitioner, or the foster care agency in charge of the child's placement, during the relevant time period. Rather, the

only two contacts during this period were initiated by petitioner's caseworker. "This lack of contact evinces his intent to forego his parental rights" (*Matter of Gabrielle HH.*, 1 NY3d 549, 550 [2003] [citation omitted]). While the father testified that he did not contact petitioner because he believed the order of protection prohibited it,* he readily admitted that he read the order and agreed that it did not expressly prohibit him from having contact with petitioner. In our view, the order itself— which simply states that the father "shall be barred from any and all contact with the child"—is narrow and unambiguous (*compare Matter of Gabrielle HH.*, 306 AD2d 571 [2003], *affd* 1 NY3d 549 [2003]) and did not relieve the father of his clear obligation to contact petitioner about the child. To this end, we note that the father readily acknowledged that, despite his claimed understanding of the order (*see* n, supra), he did in fact make inquiries about the child, albeit to his mother. Under these circumstances, we will not disturb Family Court's finding of abandonment.

Cardona, P.J., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.

---

* In particular, the father claimed that the order of protection forbade him from "know[ing] anything about [his daughter] until she was 18 years of age or such time where [he] could remodify [*sic*] it."